UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
HOUSE OF SPICES (INDIA), INC.,

                         Plaintiff,                    MEMORANDUM
                                                           AND ORDER

   -against-

                                                                    10 CV 2779 (KAM)(RML)

LT FOODS LTD.,

                         Defendant.
---------------------------------------------------------X

LEVY, United States Magistrate Judge:

        Defendant LT Foods Ltd. ("defendant" or "LT Foods") moves pursuant to 28 U.S.C. § 1404(a) to transfer venue in this action from this district to the Central District of California. The parties have consented to magistrate jurisdiction. (See Dkt. Entry #10.) On February 11, 2011, I heard oral argument on the motion. For the reasons stated below, defendant's motion is denied.

## BACKGROUND AND FACTS

        Plaintiff House of Spices (India) ("plaintiff" or "House of Spices") commenced this diversity action on June 17, 2010, alleging breach of contract and seeking both damages and declaratory relief. (See Complaint, dated June 17, 2010 ("Compl.").) The case arises out of a written distribution agreement that the parties entered into on April 1, 2005 ("the Agreement").[1] Under the Agreement, defendant appointed plaintiff "as the sole distributor for the US ethnic trade, for all Daawat and all brands using the Daawat Trade Name,[2] for a term of 10 years, ending

---

[1] At the time the Agreement was made, defendant was named L.T. Overseas LTD. (Declaration of Gordhandas L. Soni, dated Dec. 16, 2010 ("G. Soni Decl."), at 1 n.1.)

[2] Daawat is a trade name for basmati rice that defendant sells. (Compl. ¶ 6.)

April 1, 2015." (Daawat Distributor Agreement ("the Agreement"), annexed as Ex. 1 to Declaration of Gorhandas L. Soni, dated Dec. 16, 2010 ("G. Soni Decl.").) The Agreement also provided, *inter alia*, that: (a) if plaintiff failed to purchase forty-five containers of rice a year, plaintiff would pay defendant a penalty of $25,000; (b) the parties would work together to promote the Daawat brand and develop marketing programs to increase sales; (c) defendant would allocate a yearly marketing and advertising budget of $50,000 or five percent of Daawat sales; and (d) plaintiff would aggressively promote the brand and work to identify sub-distributors to enter new ethnic channels. (Id.)

In 2007, defendant, through a wholly-owned subsidiary, acquired Kusha, an importer and distributor of basmati rice in the United States. (Compl. ¶ 13.) Plaintiff alleges that after defendant acquired Kusha, it made business decisions "to fulfill Kusha's demand for basmati rice by shifting production away from LT's Daawat brand" and "to increase its distribution of basmati rice through Kusha at the expense of its distribution of basmati rice through [House of] Spices." (Id. ¶¶ 17, 18.) According to plaintiff, after purchasing Kusha, defendant changed its manner of marketing basmati rice in the United States, began requiring plaintiff to place its rice orders with Kusha, and stopped fulfilling plaintiff's orders for rice. (Id. ¶¶ 19–21.) Plaintiff also contends that defendant violated the Agreement by selling Daawat rice to other distributors for the U.S. ethnic trade and by failing to work with plaintiff to promote the Daawat brand. (Id. ¶¶ 24–28.)

Defendant denies that it violated the Agreement but instead accuses plaintiff of doing so. It has asserted counter-claims against plaintiff for breach of contract and account stated. (See Answer and Counterclaim, dated Sept. 16, 2010 ("Answer").) According to

defendant, plaintiff violated the Agreement by purchasing and selling other companies' basmati rice.³ (Id. at 7.) Defendant also alleges that plaintiff breached the Agreement by, *inter alia*, failing to (a) maintain the business at a minimum rate of forty-five containers a year, (b) aggressively promote the Daawat brand, and (c) pay for goods that defendant supplied. (Id. ¶¶ 7, 9, 14.)

Defendant now moves to transfer venue to the Central District of California. It alleges that this court is "inconvenient to the parties and witnesses involved in this action," and that the Central District of California would be a more appropriate forum. (Defendant's Memorandum of Law, dated Nov. 17, 2010 ("Def.'s Mem."), at 1.)

### DISCUSSION

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) strives "to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotations and citations omitted).

In determining whether transfer of venue is appropriate under § 1404(a), courts engage in a two-step inquiry. First, the court asks whether the action "might have been brought" in the requested transferee court. Frasca v. Yaw, 787 F. Supp. 327, 330 (E.D.N.Y. 1992). "If the proposed venue is proper, the court then considers whether the transfer will serve the

---

³ Plaintiff does not deny that it obtained (and then sold) rice from other companies but claims that the Agreement in no way prohibited it from doing so. (Plaintiff's Memorandum of Law, dated Dec. 16, 2010 ("Pl.'s Mem."), at 12–13.)

convenience of witnesses and parties and is in the interests of justice." Kroll v. Lieberman, 244 F. Supp. 2d 100, 102 (E.D.N.Y. 2003). Motions for transfer "lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). The defendant "has the burden of making out a strong case for a transfer," Ford Motor Co. v. Ryan, 182 F.2d 329 (2d Cir. 1950), with "clear and convincing evidence." New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 114 (2d. Cir 2010) (citations omitted).

In opposition to the motion, plaintiff argues that it could not have brought the present action in the Central District of California because that court would have lacked personal jurisdiction over defendant. (Plaintiff's Memorandum of Law, dated Dec. 16, 2010 ("Pl.'s Mem."), at 4–7; see also Oral Argument Transcript, dated Feb. 11, 2011 ("Oral Arg. Tr."), at 7, 13.) However, it is unnecessary to decide this question because, as explained *infra*, defendant has failed to meet its burden under the second prong of the § 1404(a) test.[4] In considering whether this prong is satisfied and the proposed transfer will serve the convenience of witnesses

---

[4] As a threshold matter, plaintiff also argues that defendant's motion is deficient because it includes no evidentiary support "by any person who actually participated in any of the events at issue nor authenticated evidentiary documents to support any factual ground for the transfer." (Pl.'s Mem. at 2; see also Oral Arg. Tr. at 4, 28.) On the other hand, defendant notes that plaintiff has not provided declarations from its proposed third-party witnesses outlining their personal knowledge of the events about which they would allegedly testify. (Defendant's Reply Memorandum, dated Jan. 5, 2011, at 2; Oral Arg. Tr. at 27.) Both parties are correct that the other has offered evidence by witnesses lacking personal knowledge, but it is unnecessary to decide how much to discount this evidence. Even if I give full weight to both parties' submissions, as I do in my analysis below, it is clear that defendant fails to carry its burden under § 1404(a).

and parties, courts should look to a number of factors, including

> (1) convenience of witnesses; (2) convenience of parties; (3) locus of operative facts; (4) availability of process to compel the attendance of unwilling witnesses; (5) location of relevant documents and other sources of proof; (6) relative means of the parties; (7) relative familiarity of the forum with the governing law; (8) weight accorded to the plaintiff's choice of forum and (9) the interests of justice.

Cool Wind Ventilation Corp. v. Sheet Metal Workers Int'l Assoc., Local Union No. 28, 216 F. Supp. 2d 81, 85 (E.D.N.Y. 2002) (citations omitted). However, "there is no rigid formula for balancing these factors and no single one of them is determinative." Fed. Ins. Co. v. Bax Global Inc., No. 09-CV-2739, 2010 WL 3738033, at *4 (E.D.N.Y. Sept. 24, 2010) (citations omitted). I will address each of the relevant discretionary factors below.[5]

### A. Convenience of the Witnesses

"The convenience of the witnesses is probably the single most important factor in the transfer analysis." Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006). "When assessing the convenience of witnesses, a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the *materiality* of the testimony that the witnesses may provide." Fed. Ins. Co., 2010 WL 3738033, at *5 (quoting Herbert Ltd. P'ship v. Elec. Arts Inc., 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004)) (emphasis in original).

Defendant contends that this factor weighs heavily in its favor because the

---

[5] I will not address those factors that are not in dispute or that the parties did not address in detail, either in their submissions or during oral argument.

majority of key witnesses are allegedly in California, including Kusha employees and/or directors who purportedly have first-hand knowledge of the Agreement, plaintiff's dealings with Kusha, and plaintiff's sales of basmati rice supplied by companies other than defendant. (Def.'s Mem. at 6–7; see also Oral Arg. Tr. at 18 ("It's the witnesses in California that can testify as to the contact with the plaintiff, specifically orders, breaches, communication and with regard to shipment.").) However, plaintiff claims it will call a number of material witnesses for whom New York would be a more convenient forum. For example, plaintiff would proffer the testimony of several third-party witnesses, including plaintiff's employees at regional distribution centers in the Northeast, who would testify that defendant failed to deliver ordered rice, and officers of other rice distributors, who would testify that defendant sold rice to them. (Pl.'s Mem. at 13.) Thus, because there are material witnesses for whom either location would be more convenient, it cannot be said that this factor weighs in favor of transfer.

      B. Convenience of the Parties

While defendant's principals and agents will be obligated to travel from India regardless of where this action is heard, defendant argues that California would be a more convenient forum for V.K. Arora, defendant's CEO and corporate designee, because his son lives in California and he has business contacts in the state. (Oral Arg. Tr. at 18–19.) On the other hand, New York would be a more convenient forum for plaintiff's officers, including Gordhandas L. Soni and Neil Soni, President and Vice President, respectively, of House of Spices, because they are residents of New York. (Pl.'s Mem. at 13.) As a result, a change in venue would, at best, "merely shift the inconvenience from one party to the other," Kroll v. Liberman, 244 F. Supp. 2d 100, 103 (E.D.N.Y. 2003), and this factor does not favor a transfer.

C. Locus of Operative Facts

While defendant concedes that the Agreement was signed in both India and New York, it argues that California is a more appropriate venue because Kusha is located in California, and the crux of the lawsuit is that defendant acted improperly in requiring plaintiff to place its orders with Kusha and in supplying rice to Kusha rather than plaintiff. (Def.'s Mem. at 6; see also Oral Arg. Tr. at 29–30.) Plaintiff, however, argues that the operative events, including the negotiation of the contract and many meetings involving the performance of the contract, occurred in New York. (Oral Arg. Tr. at 5; Pl's Mem. at 10–11.) In addition, according to plaintiff, "about half" of plaintiff's purchases from defendant were delivered to New York, so the alleged breach of contract "had the greatest impact, and caused the greatest damage, in New York." (Declaration of Neil Soni, dated Dec. 16, 2010 ("N. Soni Decl."), ¶ 6; see also Oral Arg. Tr. at 5–6.) Because events pertinent to plaintiff's claims occurred in both districts, this factor does not favor either venue.

D. Location of Relevant Documents and Evidence

Each party contends that its voluminous records are located in its preferred forum. (Pl.'s Mem. at 14; Def.'s Mem. at 7.) As a result, this factor does not favor either forum.

E. Plaintiff's Choice of Forum

Plaintiff chose to bring this action in this district and its choice of forum is "entitled to substantial consideration." Warrick v. Gen. Elec. Co., 70 F.3d 736, 740 (2d. Cir. 1995) (quoting A. Olinick and Sons v. Dempster Bros., Inc., 365 F.2d 439, 444 (2d. Cir. 1966)). "Generally speaking, [a] plaintiff's choice of forum is entitled to substantial weight and will not be disturbed lightly." Myers v. Lennar Corp., No. 08-CV-2799, 2010 WL 1992200, at *3

(E.D.N.Y. May 17, 2010). Here, defendant argues that minimal consideration should be given to plaintiff's choice of forum because "the facts giving rise to the litigation bear little material connection to the chosen forum." (Def.'s Mem. at 8 (quoting Grennwood Parners v. New Frontier Media Inc. No. 99 Civ. 9099, 2000 WL 278086, at *2 (S.D.N.Y. Mar. 14, 2000)).

However, the record indicates otherwise, as all the negotiations for the Agreement took place in New York, defendant continued to send representatives to New York following the Agreement, and defendant delivered a majority of the rice purchased to plaintiff in New York. (Pl.'s Mem. at 10; see also N. Soni Decl. ¶ 6.) Moreover, even assuming that the operative events occurred outside of New York, there is ample authority for the proposition that courts should always afford a plaintiff's chosen of forum significant weight when it is the plaintiff's home state. See, e.g., Merkur v. Wyndham Int'l Inc., No. 00 CV 5843, 2001 WL 477268, at *3 (E.D.N.Y. Mar. 30, 2001) ("Here, although the accident occurred in Puerto Rico, plaintiffs filed their action in New York, which is also their home state. Accordingly, this factor dictates against transfer."). This factor, therefore, weighs strongly in favor of denying the motion to transfer.

F. The Interests of Justice

Finally, defendant argues that the interests of justice favor a transfer of venue because the Central District of California "would allow for the quickest resolution of plaintiff's claim." (Def.'s Mem. at 8.) For this proposition, defendant cites statistics indicating that, in 2009, the median interval between the filing of a case and its disposition in this district was on average longer than in the Central District of California. (See id.) However, because delay is inherent in the transfer of any case, the transfer itself would likely erase any possible efficiency that would come from changing the venue.

After weighing all of these factors and hearing oral argument on the motion, I find that defendant has failed to carry its burden of showing a "strong" case for transfer by clear and convincing evidence. As stated above, plaintiff's chosen forum is entitled to significant weight and the evidence presented fails to demonstrate that the Central District of California is better-suited to serve the convenience of the witnesses and parties. As a result, plaintiff's choice of forum should remained undisturbed.

## Conclusion

For the above reasons, defendant's motion for transfer of venue to the Central District of California is denied. In addition, a telephone conference is scheduled for March 24, 2011 at 4:30 p.m.

SO ORDERED.

Dated: Brooklyn, New York
March 15, 2011

/s/
ROBERT M. LEVY
United States Magistrate Judge